Good morning, Your Honors. May it please the Court, my name is Michael Livingston. With me at counsel table is Stanley Levin and Keith Peck, also counsel. Also in the courtroom are Natalie and Michelle's parents. Mr. Levin's the lead counsel in this case and his practice is devoted almost entirely to representing handicapped children in IDEA and 504 cases. Were it not for his disability, he'd be standing here making this argument this morning and I can say without a doubt that it would be a more incisive argument. My challenge this morning is not only for Mr. Levin but more importantly to speak for Natalie and Michelle who, because of the State's deliberate indifference, are totally unable to communicate. Let's be clear about something up front. Our case here is about deliberate indifference. We are contending that the State's deliberate indifference caused irreparable and profound injury to these children. Deliberate indifference to exactly what? Pardon me? Deliberate indifference to exactly... I'm trying to understand the parameters of a 504 case in these circumstances. So what do you understand you have to show? I understand you have to show deliberate indifference. What else do you have to show under 504? We have to show deliberate indifference in connection with the failure to provide a free and appropriate education. I think that's a succinct way to express it. Okay. So, all right. Now we have a free and appropriate education set of standards under the IDEA and we have a different definition under 504. It's written quite differently. Do you... Are you saying that you... Are you relying on Judge Ezra's original determination of res judicata and simply taking the IJ's determination or the ALJ's determination on the IDEA and importing it into the 504 clause of action or are you starting over again? Well, we're not starting over again. The administrative hearing officer's determination that there was a denial of FAPE is a starting point for the analysis. But from that point, we have to establish that the denial of FAPE had intentionality, had deliberateness associated with it. That's where the discrimination comes in. And there's been this argument made that somehow the regulations promulgated under Section 504 are separate from and cannot be read into Section 504. I believe that's directly contrary to the United States Supreme Court's decisions in the Daron case. In which case? I'm sorry. That's Consolidated Rail Corporation v. Daron. That's a 1984 case. The same year, frankly, the Supreme Court handed down Smith v. Robinson. And in that case, the court, referring to the 504 regulations, said this court generally has deferred to contemporaneous regulations issued by the agency responsible for implementing a Congressional enactment. The regulations See, what's interesting is that the 504 definition of FAPE is quite different from the IDEA definition of FAPE, is it not? Well, it is not different. I don't think it's Section 104.33 states, in general, a recipient that operates a public elementary or secondary education program shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature of the severity of the person's handicap. And then the next section states, for the purposes of this subpart, the provision of an appropriate education is the provision of regular or special education and related aids and services that, one, are designed to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met. And two, are based upon adherence to procedures that satisfy the requirements of the agency. Does that comparative requirement appear in the IDEA? Well, the IDEA deals specifically with the requirement to provide a free and appropriate education. It provides procedural standards. It provides other standards. And that is a benefit under the law to which handicapped children are entitled under Section 504. Section 504 prohibits discrimination on the basis of handicap in connection with the benefits exclusion from programs, denial of benefits, or discrimination. That's the way the statute is framed. I didn't quote it exactly. It reads, no otherwise qualified handicapped individual shall solely by reason of his handicap be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving the federal assistance, including special education. Mr. Woodinson, am I correct that Judge Reel seized upon the notion of discrimination and reasoned that they weren't discriminated against because they were handicapped, and therefore they're essentially, I guess, there'd be a failure of the prima facie proof on discrimination. Is that what his reasoning was? Well, that is one of the arguments that certainly has been made, citing the Grison, G-R-Z-A-N case, I think, Sixth Circuit. It's, in my view, an anomaly in the law. It's a case that, by its own terms, has been limited to cases that are in the nature of medical negligence cases. But the contention is, I think, that the discrimination under Section 504 was not something that the states should have, that the states were on notice of, and therefore their Eleventh Amendment immunity prohibits a claim, a private right of action against them for that kind of a claim, citing the Alexander versus Sandoval decision and Jackson v. Birmingham. Maybe I misunderstood his order, but I thought, and I thought from your brief in attacking it, I thought the concern was that he misunderstood the discrimination element of the cause of entitled to an FAPE, and the state was deliberately indifferent to providing them with those services. But it's not by reason of their discrimination that they didn't get it. It was because of the state's indifference to the needs of all handicapped children in Hawaii. Have I fairly summarized your theory as to why that constitutes discrimination? I think you have. The state was deliberately indifferent to the known need of these two girls to a particular type of educational and mental health service. Because the usual discrimination case is a case where, I forget the name of the Supreme Court, the nursing school wouldn't provide adequate accommodation to basically accommodate the, I guess in that case it was a hearing disability. And for that reason the claim was brought, saying I'm being discriminated against because of my handicap. Here your claim of discrimination is not based so much on the handicap as the motive for the discrimination, but the fact that there's a whole class of handicapped people that the state simply overlooked. It may have been because they didn't want to spend the money, it may have been because they were hopelessly inept as bureaucrats. I'm sure you've got volumes of discovery that you're prepared to lay out a trial. But is that a distinction that makes a difference in our analysis of the discrimination element? I don't think it's a valid distinction. I think if you look at Lovell v. Chandler, you'll see a case that is about as similar as you could possibly have. Lovell v. Chandler was a class, initially was a class action brought on behalf of all disabled people who were categorically excluded from a new health care program in Hawaii called Quest. And the district court found on a summary judgment motion as a matter of law that that constituted facial discrimination under Section 504. Now the same kind of finding we have in this case in the Felix case, where Judge Ezra looked at the failure to provide a class of special education children with mental health services and found as a matter of law that it was a violation of Section 504. But I guess this is my question. Compared to what? I mean in Lovell it was compared to everybody else, right? Everybody else was getting the medical services and a class of the handicapped people were not. The 504 regulation seemed to contemplate a comparison of that kind. They talk about, and that's sort of a good thing because it means that they much more comfortably fit under the statute and it seems to me create less Sandoval problems than the regulation in Sandoval because they seem to be reflecting the concepts in the statute. But that being the case, don't you bear some, I mean you may well have a cause of action here, but I'm not sure it's exactly the one you think you have. That's what's bothering me. In other words, it seems to me that the regulations seem to require that you demonstrate that these children's needs are not being met to the same degree that other children's needs are being met. Isn't that what the statute says? The regulation says, I'm sorry. That is correct. But you can't compare the needs of a severely autistic child with the needs of a regular education child just as apples and apples. And that's why it's so provided under the IDEA. Well, but the other thing that the regulation says quite clearly, the 504 regulation, is that implementation of an individualized education program developed in accord with what was then the early version of IDEA is one means of meeting the standard established in paragraph B1L1. So there must be others. I think clearly there are. The fact that they didn't provide an IDEA FAPE can't be the answer because there may be some other way that they met 504. Well, that, it may not be dispositive that they were not provided with FAPE. So you're not relying on the ratio to kind of ruling that judge were originally made. Well, I think it certainly is evidence and supports the claim that they were not provided with services. But the finding within the administrative hearing is based upon a set of facts that are uncontested on this record. I mean, we have conclusively established on this record that Natalie and Michelle were known by the state to be autistic. Michelle in 1994, Natalie in early 1995. The state knew that they needed services, and if they weren't provided with those services, they'd be irreparably injured, potentially. It knew that those services were available. In fact, their 30B6 designee stated that those services should have been provided within a few months. And it is undisputed that for four years they received no special education, no autistic, autism-specific services, and no mental health services until 1998. There's a chart in our reply brief at page 11, which reflects the IEPs that are in the record and shows that there are no mental health services that were provided for the entire period of four years. Is there anything in the record about how Hawaii in general provides mental health services in general? For children? Well, the history goes back... Children, I mean. Just children in general. The way it was supposed to work, and this goes back into the 1980s, is there was supposed to be a working together between the Department of Education and the Department of Health. In 1990, the federal government came in, the Department of Justice, and told the state that they were out of compliance because the departments weren't working together. In 1991, the Office of Special Education of the federal government came out and... I'll try and give you the specifics on this. The Office of Special Education Programs found that the DOE was not in compliance with federal law because mental health services were not effectively being provided to special education students. That was what Felix was all about. The state auditor in 1993 told the state that it was exposed for a lawsuit. That lawsuit followed in 1993, the Felix class action. In 1994, Judge Ezra found that the Department of Education and the Department of Health were out of compliance, and it violated Section 504 because they were not providing mental health services to special education children. That's almost really not the question I asked you. I was trying, again, to pursue what I understand the 504 regulation to say. Are designed to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons. So I was asking you, in general, i.e. with regard to non-handicapped persons, does the state provide mental health services to children in school? To non-handicapped? Non-handicapped. Who need mental health services? I'm not, I assume that they do. Isn't that what you'd have to demonstrate to meet this standard, as it's written? Well, I think we have to. Something imperative. And isn't that what, I mean, isn't that what saves this part of the regulation from a Sandoval problem with regard to private causes of action or anything else? Well, the, I'm not sure I understand. You probably don't, because it's a different view of the case. But I'm struggling through it. It seems to me that we have to take this regulation to mean what it says. Well, and I think the regulation prohibits the, prohibits the state from denying a child an appropriate education with an element of intentionality or deliberateness. I think that's what the essence of the regulation is. And I think that's completely consistent with the statute itself. And you can look to the failure to provide a FAPE under the IDEA as evidence of that. It may not be dispositive evidence, but it certainly indicates that. But you don't have to look at, even at the administrative hearing officer's decision here. You look at the facts in this case. And you find that here you had a situation in which the state knew that these children required special education and failed to provide it to them. And that is something that if you compare it to a child that is not in special education, that is discrimination. The child is not being treated similarly because the predicate here is that a special education student who requires mental health services in order to be educated can't be educated without them. And that is exactly what happened in this case. So you view the benefits or the programmer activity as being essentially going to school? I'm sorry. Going to school or getting some sort of an education. In other words, what are they being denied the benefits of because of their handicap? It's an education school. Correct. But it's more than that. It has to be a meaningful education. I mean, just putting a body in the classroom is not sufficient. And I think that is the thrust of all of these regulations. That's the whole point of the regulations under 504. So does discrimination then equal deliberate indifference? That's all you have to show is deliberate indifference and you've established discrimination? I think that is, in fact, the case. And if you look at the Jackson... Let me just follow up with a hypothetical. If your evidence showed that the state made these services available to all other handicapped children suffering from autism, but didn't offer them for the two girls here, and you could show that was because of the deliberate indifference we've been talking about, you would conclude that that constitutes discrimination, giving you a cause of action under 504? I would conclude that. And let me just turn that hypothetical a little bit. If the state gave those services to just one autistic child, does that excuse them then under 504 from giving those services to every other autistic child? I mean, I think the... And if you look at the way that discrimination has been handled in Duval, for example, and in these other 504 cases, what is important is the deliberateness, the intentionality, because that's what puts the state on notice. The statute actually doesn't require discrimination. It says, excluded from participation, be denied the benefits of, or be subject to discrimination under. So discrimination is only one of three possibilities. Exactly. And denial of benefits of a program. That seems to get lost in the case law, but in fact discrimination is not the touchstone here. Precisely. I mean, it's one, but I think discrimination is where you get this Duval standard of deliberate indifference. But the denial of participation in a program, denial of the benefits of a program, I mean, that's where the IDEA comes in. And I think that's really where the rubber meets the road here. I do want to reserve 15 seconds. All right. Well, I'll give you a little extra time. Thank you. It's a very complicated and interesting case. Thank you for your argument. Good morning, Your Honors. My name is Dorothy Sellers. I'm a Deputy Attorney General and I'm here today on behalf of the state of Hawaii. I'm here to ask the court to affirm the summary judgment that Judge Rial granted on the basis of the following. Could you just pull the microphone a little closer? Sure. Thank you. The district court judge entered an excellent legal opinion in May of 2005, and that is what is before the court we are asking you to affirm. Two things are clear here. First of all, these children were denied fate for approximately four years, from 1994 to 1998. And second of all, in the course of the administrative proceeding, they received a remarkable, extraordinary, and unprecedented amount of compensatory education, related services, services for the parents, on a 24 hours a day, seven days a week, year-round program. We're now in year eight of that program, and there's evidence in the record that it is running about $250,000 a year per student. This is really an extraordinary result for a fate administrative hearing. And the question for the court today, and the answer is no, is whether after the plaintiffs prevail at the administrative hearing, they then can turn around and file a claim for money damages, which you can't get under the IDA, for personal injury based on the same facts, the same educational injury, and the same denial of fate as we just lost in the administrative hearing. But let's assume the answer to that question put that way is no. In other words, they cannot simply rely on denial of fate as fate is defined in the IDEA. But why don't they still have a 504 cause of action for damages, which complies with the Department of Education regulations under 504, with regard to what they're also calling fate, but which seems to be something else, which they say is something else, because they say that compliance with IDEA fate is not necessarily necessary. So just cutting loose of the IDEA at this point, why isn't there a cause of action under 504? Well, there's no cause of action for two reasons. One is because the plaintiffs have always tied it to fate and to the denial of fate. And second of all, in large part, there's no cause of action because we have to go back to the Rowley case at the Supreme Court. To which, I'm sorry? We go back to the Rowley case that the Supreme Court decided. But that is an IDEA case. Yes. And the Rowley case makes very clear that, I have to backtrack just a moment. The personal injury that they're alleging in their Section 504 claim is loss of opportunity to obtain normal skill levels. And that flies in the face of Rowley, I think, where it says, whatever Congress meant by inappropriate education, and it was an IDEA case, it is clear that it did not mean a potential maximizing education. Let me back up for a minute. Are you saying, is it your position that there is no cause of action under 504 for a deliberately indifferent refusal to provide some form, let's not get specific about it, of accommodation or special education services to children who need them, even though other children's needs are met generally? Is there a cause of action for that under 504? It's the court saying there were no attempt whatsoever to provide a special education. Or not a good enough one or whatever. Then we have factual issues and so on. But is there a cause of action in general under 504 of that general description? IE, is there some kind of cause of action for damages under 504 that relate to a failure or an inadequacy to provide a free and adequate education of the kind defined under 504? I think, Your Honor, that the structure of the IDEA is that that is the remedy. And so what you're left with is 1415L, which is part of the IDEA, and that reference to a relief available. I'm sorry, can you repeat? And our position would be that when you look at the part of the IDEA that refers to Section 504, that this is not, within that section, this is not a 1415L case because Congress was reasonably clear that Section 504 is only when the built-in IDEA remedy is simply not available. And that can't be said in this case. They got the FAPE remedies, and there's no basis then for them to go on and say, well, now that we've done that, we would like to pursue 504. So let me stop you and just ask, hypothetically, we're now in 1998, and for whatever reason, the State of Hawaii still cannot or will not provide an IDEA or FAPE to these two girls. Would they have a cause of action in 1998 on a theory that they were damaged in their development during the four-year period because the state failed to provide them a FAPE? I think the first line is that they have to exhaust their remedies under the IDEA. We know that, but in my hypothetical, in 1998, there was nothing yet available. Right, and they never complained about anything. They hadn't done anything. They hadn't filed any IDEA claim. You're still hung up on administrative remedies. I'm just asking, and maybe it's an unfair hypothetical, but I'm just asking is there, in your opinion, a cause of action under the Rehabilitation Act for damages under just pure tort principles that my development was severely damaged as a result of the fact that during that four-year period I didn't get any services at all? The answer is no. There's no such cause of action there either. And why doesn't 1415L, in fact, say that there is? First of all, Smith v. Robinson. I mean, as I understand your argument, at least at points, it seems to be that Smith v. Robinson was only that attorney, that the overturning of Smith v. Robinson was only that attorney's fault. That is not our argument. Well, maybe that's what Judge Real said. Somebody said it. All right, so why, when 1415L seems to say in terms that whatever remedy you would otherwise have under 504 you still have, why isn't that true? I think 1415L is not giving seriatim remedies. It is getting an either or. Either you use the fake remedies or. Well, that can't be right. That cannot be right because the one thing it does say is you have to, it says, but you first have to exhaust. So they're obviously talking about something that could be exhausted. So it must be seriatim. No, there are no post-exhaustion cases out there. The Rob was a pre-exhaustion case. The Charlie F case on which Rob was based. But the statute talks about the fact, the one condition it puts on is that first you have to exhaust, right? So they must think that there are some set of cases which after you've exhausted you can bring. Your Honor, if you look at addendum 3, page 7 to the red brief, it excuses you from exhaustion for, this is part of the congressional report that was part of 1415L. And it's very limited. They have four examples of when you could have a 504 case and you didn't need to exhaust. Where is that again? Page 7 in addendum 3 to the red brief. Page 7 is hard to top, I think. And it's things like it's futile or they didn't give the hearing examiner enough authority and it's matters of that scope. But no one has ever gone, collected, not collected, but received this vast array of compensatory education and counseling. So you are saying that there is no cause of action for a failure to provide compensatory education under 504. That's your position. We're saying there would be if there were no claim under the IDEA. But there is a claim under IDEA. So you're not creating a null file. No, Congress was saying that sometimes it would be futile because the state had failed to put those remedies in place. And then the other point I'd like to move to is this. Section 504 does require discrimination solely on the basis of disability. In fact, as I just read before, there are three provisions. Yes, but the one that plaintiffs have pursued their case on is the one of discrimination and of deliberate indifference because just regular discrimination doesn't cut it under 504. It has to have that overlay. So the other two I don't think were ever part of this case, Judge Berzon. And what we're saying is and what Judge Real properly said was there's no evidence that these two children were discriminated against solely on the basis of their disability. And that coincides also with the Seventh Circuit case. Ms. Sellers? Yes, sir. As I understand what's going on here, you've got Michelle and Natalie who perhaps right now are receiving the services that they say they should have received during the four years that they didn't get the services. Now, there's no question they didn't get the services during those four years. That's true. And there seems to be no question that they were eligible for those services during those four years. Is that correct? Yes. Okay. We did argue that they did receive some of those services, be it under a different name. But the school district, I suppose it is, or the state of Hawaii declined to or these services were not provided during the four years. And I think your argument is, well, the state didn't know anything about the problems that Michelle and Natalie had. But if the state had known, I think your argument would be, they would have provided the benefits, which they are doing now. Is that your argument? Or did the state know that they were entitled and just decided that we're not going to provide the benefits, we don't have that much money, we're not going to do it? That part is no. The answer to your question is yes. You know, these children were picked up early on in their lives for the Zero to 50 program. They were not picked up under an autism theory. They were picked up under emotional disorders. They were put in the school system. They were part of the IDA procedures, and there's no question that we followed those and we had the IEP teams, we had the IEPs, we had services. Those services were provided. We're straying a little bit here, Ms. O. Why didn't Hawaii provide these services to these children during the four years? I think because no one knew that they were required for these girls because the diagnosis was autism. Because Hawaii didn't know they had the problem? I think that's right. They were diagnosed with autism in 94 and 95 by the Department of Health, were they not? No, that was mild autism spectrum or PPD-NOS, but there was no clear diagnosis of autism that the state had. And when they took those children into the special education program, neither was under the autism heading. One was for some childhood disorder and one was for emotional impairment, I think. But it's not, oh, wow, here are two autistic children. All right, let's suppose there were. I'm still trying to get to the basic legal issue, okay? So let's suppose that the state of Hawaii absolutely knew that these children were autistic and let's also make it more extreme in that they provided them no special services. Let's say they did nothing, all right? Your position is, and then the same thing occurred that occurred here. In 1998, they went for a hearing, they had IEPs, they had a hearing, they got FAPE after that. Your position, as I understand it, is they still would have no cause of action under 504. They would have no cause of action under 504. For the four years that they got nothing. Yes, that's correct. And our position is, one, there's no cause of action. No kind of cause of action, not one based on IDA or anything else, just none. That's correct. And that they were not discriminated against solely on the basis of their disability. Well, they were, why were they not, in my hypothetical at least, not discriminated against on the basis of disability under the definition in the regulations under 504, i.e., they were provided nothing with regard to education, whereas other children were provided something with regard to education for their needs. But it goes back to that Seventh Circuit case where the only reason that they were in special ed was because of their disability. And the question is, were other people in that same group receiving the services? And the answer to that question, Judge Berzon, is clearly yes. Well, that would be a proof problem. That would be a proof problem. Let me go further and say, let's suppose, add to my hypothetical, that nobody in this category was getting services. Then will you have a 504 cause of action? I'm trying to understand what your legal theory is. I think if the state of Hawaii said, we're just not going to do autistic children, it's too hard, and we're not even going to take them into special ed, then you would have the cause of action, and then you would have the discrimination solely because of the disability. But that's not what happened here. They were in special ed. They were receiving services throughout the whole time. And then years later, someone says, well, those were the wrong services, and maybe they were, but it doesn't mean that we were discriminating against them on the basis of their disability. And if you look at the transcript of September 13, plaintiff's counsel said, well, yes, there were a lot of children in that same problem who were receiving the services. So I don't think you can say that we, that they were discriminated against solely on the basis of their disability. Well, Mr. Livingston would say that the evidence showed that you were deliberately, or your clients were deliberately indifferent to providing the services under the program. And you're saying, no, they weren't. The school or the state was doing, or reacted in a reasonable manner in providing what they did and not providing what they did not. I think that's fair. Now, it doesn't, that pretty well, it sounds to me as if it means that there's going to have to be a trial to determine the disputed issue of fact as to whether there was deliberate indifference by the state or not. I think that deliberate indifference is a legal conclusion that's based on the facts. And I think that the only facts that have been adduced here in support of this claim of deliberate indifference are, one, you denied fake, which just doesn't get you to that level, or two, look at the Felix consent decree. And I need to tell the court that the Felix consent decree had nothing to do with individual cases. And if it shows anything, it shows that we were taking action. We did sign the consent decree. We did eventually get in compliance with it. And it's really unfair to say the reason that these two children were harmed was because you had the Felix consent decree. Because when we signed that decree, we were not signing on to provide Section 504 damages to 23,000 special ed students. My understanding is not that it's because of the Felix consent decree. It's because of the underlying failures that resulted in the Felix consent decree and later in the contempt order for failure to abide by the Felix consent decree. So it's simply to demonstrate that there were, in fact, systemic problems here. There were problems. We solved the consent decree. We were released from it. It took six years, maybe more. I can't remember who wasn't. There was a contempt order eventually. The only reason that I brought it up is to make the point that the existence of that decree does not prove that we were deliberately indifferent to these two children. No, but the facts that led to the decree, the facts that underlay both the decree and the later contempt finding are indicative of the kind of systemic failure that you suggested earlier might be relevant. I'm saying that for purposes of proving deliberate indifference for these two children, they have to prove their own case. They can't just point and say, well, there were other problems out there. Well, in general, with regard to discrimination cases, statistics and circumstances with regard to other people are relevant when you're trying to demonstrate the reason for the discrimination or the denial of the benefit. Otherwise, you're caught in a catch-22. If you can't rely on other circumstances for comparison, then you're not going to be able to prove your case. Some children within the system fared wonderfully. Some autistic children within the system fared wonderfully. And that was part of, and I again refer you to pages 31 and 32 of the September 13th transcript. But once again, I'm saying it is unfair to the state of Hawaii to say you must be guilty. You're guilty here because you had this consent decree. No, no, that's certainly the case. But that's not my understanding of the evidential significance of it. It's not that you're condemned. It's that there were, in fact, systemic problems. Well, yes, but it doesn't prove anything as to these two children. I started to answer a question from Judge Tallman some time ago. I can't even remember what the question was. Nor can I. It's all withdrawn. All right. Thank you very much. Thank you. Counsel, we'll give you two minutes to speak. I'll speak quickly. First of all, the contempt order was in 2000 after the damage had been done here. And you're right about it. It's systemic. It's contextual. I wanted to respond to Judge Thompson's question about what the state knew. And I think if you look at the letter from Dr. Margaret Coven in May of 1994, where she tells the state, Michelle has mild autism. She's got normal intelligence, no behavior problems. She needs special services during this critical time period. It would be a shame if we didn't provide these. And here's where you get them. You know, they're available. And here's how you get them. She even said, you know, if the teachers need help in the classroom, this is where they should go to get them. The letter is so compelling that Judge Real asked the attorney for the state in oral argument what the state did about those recommendations. The answer, nothing. Nothing for four years. I want to turn now to what has happened. So that's what you contend is the deliberate indifference. Is that right? Well, that's one example. I mean, they knew that the children needed these services. They knew the services were available. They did not provide them. And that is deliberate indifference under Duval. The problem I'm having with both sides' arguments is you're doing a wonderful job of trying your case to the appellate court here, but you're not helping us much in trying to analyze whether or not there's a cause of action under 504. I mean, if we let you go to trial, it sounds like you're going to have a great battle of the evidence. But you're not helping us much on the legal issue. Well, I think the legal issue is set out in terms of the regulations under 504 and what the regulations require. And that's our burden of proof, to establish that there was a violation of those regulations. I think the evidence on the record establishes that as a matter of law, frankly. But at the very least, we have genuine issues of material fact that entitle us to a trial. And on that point, I want to just emphasize how critically important it is. And it gives me no pleasure to make this request, but if this court remands, it's essential that Judge Reel be replaced. He has made up his mind about this case. He's prejudged the evidence. If you look at footnote 12 to the state's brief, they quote Judge Reel as correctly observing that there was no pain or suffering in this case. That's what he said from the bench. If you look at living design, his conduct in this case is very similar to what happened in that case. He came in after four years of intensive litigation, after numerous considered decisions by Judge Ezra, and swept them all aside. He asked at the end of the summary judgment, look at the last paragraph of the transcript of the summary judgment hearing. He says, well, I'm finding in favor of the state, but I think your proffer of uncontested facts is all conjectural. So why don't you go back and give me some undisputed facts? And, of course, they were unable to do that. Nonetheless, he issued his decision. It's essential to get a fair hearing here. Thank you very much. Thank you. This is Mark H is submitted and we will take a short break. Thank you.
judges: Thompson, Berzon, Tallman